## Jarecki Manufacturing Company, Appellant, v. Samuel T. Dailey et al., The National Bank of the Republic, Garnishee, and Studebaker Bank, Inter=pleader, Appellees.

## Gen. No. 15,825.

1. GARNISHMENT—*when garnishee entitled to discharge.* If the answer of the garnishee denies property in its hands it is entitled to a discharge unless such answer is overcome by proof.

2. GARNISHMENT—*when interpleader properly sustained.* Held, under the evidence, that the title to a check originally owned by the principal debtors had passed and that the proceeds thereof in the hands of the collecting bank were not susceptible to garnishment.

3. EVIDENCE—*against whom admissions competent.* Admissions against interest are only competent as against those making them.

Appeal from the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in this court at the October term, 1909.    Reversed in part and affirmed in part.    Opinion filed October 5, 1911.

**Statement by the Court.** This is an appeal by the plaintiff, the Jarecki Manufacturing Company, from a judgment of the Municipal Court of Chicago in favor of The National Bank of the Republic, garnishee, that the said Bank as garnishee be discharged, and in favor of the said National Bank of the Republic, garnishee, and Studebaker Bank as interpleader, against the said Jarecki Manufacturing Company for costs.

The original suit was one of the first class, in attachment. According to the affidavit for attachment it was brought by the Jarecki Manufacturing Company against "Samuel T. Dailey and Homer M. Dailey, doing business as Dailey Bros., upon a running account for goods, wares and merchandise sold and delivered," the ground of attachment being the non-residence of

the defendants. So far as the record shows, there has been no appearance of or personal service on the original defendants or attachment or garnishment of any other property belonging to them than that alleged to be garnished in the hands of the National Bank of the Republic. After the service of the garnishment, however, the usual notice by publication was made and mailed to the alleged address of the defendants. They were called and defaulted on January 12, 1909, and the plaintiff's damages were assessed by the Court on April 23, 1909, at $1183.04.

On November 8, 1908, the attachment writ was served on The National Bank of the Republic of Chicago, and on November 30, 1908, interrogatories to said Bank were filed. To the direct interrogatories asking whether the garnishee had, at the time of the service of the writ or since, any property of Dailey Bros., Samuel T. Dailey or Homer M. Dailey, or either of them, in its hands, or was then or since indebted to them, the answer by the garnishee was a direct negative.

To the interrogatory: "Did you on or about the day of the service upon you of said writ collect any drafts or checks payable to the order of said Dailey Bros., Samuel T. Dailey or Homer M. Dailey?" the garnishee answered that on November 18, 1908, the Studebaker Bank of Bluffton, Indiana, sent in the regular course of business certain checks to the National Bank of the Republic (the garnishee), and among them a check drawn by the First National Bank of Bridgeport, Illinois, by its cashier, to the order of "Dailey Bros." for $1300 on the Fort Dearborn National Bank of Chicago. The check was endorsed in blank, "Dailey Bros.," and then specially endorsed to The National Bank of the Republic by the Studebaker Bank. The garnishee collected the check through the Chicago Clearing House on November 19, 1908, in the regular course of its business and, pursuant to the

instructions of the Studebaker Bank, placed the proceeds on its books to the credit of the Studebaker Bank, which had continuously for many years kept a general deposit account with the garnishee. The Studebaker Bank has drawn its checks, drafts and bills of exchange on said banking and deposit account. The garnishee further answered that it was informed and believed that the check and its proceeds were, at the time of the service of the writ of attachment on it, the sole and absolute property of the Studebaker Bank and that the plaintiffs had no right or interest therein.

In the same order of April 23, 1909, which assessed the plaintiff's damages, leave was granted by the court to Studebaker Bank to interplead, and further the order reads: "It appearing to the court from the answer of the garnishee, The National Bank of the Republic, that no funds were found, leave is given to traverse answer of said garnishee and thereupon this cause comes on for trial on the traverse of the garnishee's answer and upon the interplea."

The Studebaker Bank on the same day filed its interplea, claiming to be the sole owner of and entitled "to the funds garnished by virtue of the attachment writ herein and now in the possession of The National Bank of the Republic, of Chicago."

It alleges that it purchased the draft in question on November 18, 1908, from one Catherine F. Dailey, and in payment therefor issued to Catherine F. Dailey its certificate of deposit for $1300, on which certificate it remains liable to Catherine F. Dailey or order; that when purchased it bore the endorsement, "Dailey Bros.;" that it forwarded the draft to the National Bank of the Republic for collection and that it was collected and the proceeds placed to the credit of the Studebaker Bank in the regular course of business, as set up in the answer of the National Bank of the Republic, and that the draft and proceeds have, ever since the purchase of the draft by the Studebaker

402          APPELLATE COURTS OF ILLINOIS.

Jarecki. Mfg. Co. v. Dailey, 163 Ill. App. 399.

Bank, been its property, and that neither said Dailey Bros. nor any. member of said firm nor any other person had any right or interest in the same.

The plaintiff, the Jarecki Manufacturing Company, also on the same day filed a sworn general traverse of the answer of the garnishee, the National Bank of the Republic, to its interrogatories, which concluded: "And the said plaintiff denies that the endorsement 'Dailey Bros.' on said draft, as it appears by the answer to said interrogatories was executed by either the said Samuel T. Dailey or Homer M. Dailey, members of said firm of Dailey Bros., or by any person having authority to endorse the said draft."

On the 26th day of April, 1909, the Municipal Court entered an order reciting that it had heard the evidence and being fully advised found the issues for the National Bank of the Republic as garnishee. It therefore discharged the garnishee and ordered that the suit be dismissed as to the interplea.

On May 26, 1909, by stipulation in open court the order of April 26th was vacated and another order entered *nunc pro tunc* as of April 26th. This is the order first above described in this statement and is the judgment appealed from.

In this court the plaintiff—appellant—insists on assignments of error attacking the discharge of the garnishee and the judgment for costs in favor of the National Bank of the Republic and the Studebaker Bank, claiming that there should have been judgment in favor of the defendants, Samuel T. Dailey and Homer M. Daily, for the use of the plaintiff against the garnishee, The National Bank of the Republic, for $1183.04.

CASTLE, WILLIAMS LONG & CASTLE, for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

There are various technical objections raised by the appellee to our consideration of this appeal on the record which has come to us, of which objections it is not necessary to say more than that they are not well taken.

The substantial questions in the case are properly before us, we think, for decision.

But in the view we take of it, it is only necessary to discuss one. The appellant's whole case is based on the position that John Dailey had no authority to endorse for Dailey Bros. the draft which is involved and which is described in the statement prefixed to this opinion.

It does not matter, therefore, what ultimate decision of the appeal we might arrive at were we convinced of the correctness of this premise of the appellant's argument. Without going further into it, we may place our decision on our want of such conviction. The burden of sustaining the traverse of the garnishee's answer was undoubtedly on the plaintiff. The garnishee expressly denied having in its hands any assets of the defendants or being indebted to them. This denial entitled it to the discharge given to it by the judgment unless overcome by proof. Under no theory could the answer detailed in the prefixed statement to the interrogatory concerning the collection of a check payable to the Dailey Bros. be held to charge the garnishee unless it was supplemented by proof that this piece of negotiable paper endorsed "Dailey Bros." and collected, as the answer discloses, for and as the property of the Studebaker Bank, was at the time of collection the actual property of the defendants. The plaintiff's theory is that it has furnished that proof by the testimony of Fenton, district manager of the plaintiff company, that Samuel and Homer Dailey composed the firm of Dailey Bros., supplemented by an answer in

the deposition of Catherine F. Dailey, stepmother of the defendants, to the same effect and a further answer that it was John Dailey who endorsed the check.

But, leaving out of account that it is a very doubtful proposition, considering the presumptions concerning signatures necessary to the negotiation of commercial paper, whether, if the non-membership of John Dailey in the firm of Dailey Bros. was to be taken as proved, this would furnish even sufficient *prima facie* evidence of the endorsement being without authority, we do not agree with the plaintiff's contention that the non-membership of John Dailey was proved. Fenton declared that his knowledge was derived from Samuel and Homer Dailey's statement to him. That was pure hearsay, only admissible *against* Samuel and Homer Dailey, as an admission against their interest, not as self-serving testimony in their favor. (Rush v. Thompson, 112 Ind. 158.) But the attaching creditor, who is suing Samuel and Homer Dailey alone, is pursuing the garnishee in their right. His interest in this draft is their interest, not one adverse to them. The interest of the garnishee and of the interpleader, on the other hand, comes from John Dailey's action and is in privity with his interest. The testimony of Fenton, therefore, is clearly inadmissible and worthless as against the garnishee to prove John Dailey not a member of the firm.

Mrs. Dailey's testimony to the same effect is rendered futile by the fact that in the same deposition she retracts it. When asked, "Who gave him (John) the authority to endorse the name of 'Dailey Bros.?' " she answered: "He is one of the Dailey Brothers you know." The inquiry then proceeded:

"Q. He was not a member of the firm of Dailey Bros.?

A. I could not tell you that part of it.

Q. You have said he was not.

A.  I don't know whether all four of them were in it.  All four of them are Dailey Brothers.''

Fenton's and Mrs. Dailey's testimony is all the evidence relied on by the plaintiff to show that John Dailey was not a member of the firm of Dailey Bros.

On the other hand, the record shows that there were four brothers named Dailey connected with the transactions out of which this controversy sprung.  They were the sons of Michael F. Dailey, deceased.  Their names were Samuel, Homer, John and Charles.  The witness Perlman of the Jarecki Manufacturing Company says:  ''The Daileys were contractors of big oil wells,'' and it appears that the widow of Michael F. Dailey was also interested in oil wells.  The original debt in question here was for things needed in the construction of an oil well.  One of the witnesses called by the plaintiff, an officer of a bank doing business with the family, in answer to the question, ''Do you know who composed the firm of Dailey Bros.?'' answered, ''I don't know to a certainty—sons of Michael Dailey.''

The widow of Michael F. Dailey, through whose negotiations the draft came to the garnishee ultimately, had an account with the bank dating back to her marriage with the father of these four sons, and, as already noted, was herself interested in oil wells, and seems at times to have acted as treasurer for the boys' business, although as to the draft involved here, the most definite evidence there is about it shows that she was a holder for value.  At all events the positive evidence is that the Studebaker Bank was such a holder.

The plaintiff's manager, going to the Dailey farm, as he says, to investigate the truth of Samuel's taking the check and leaving the neighborhood, talked about the matter with John and Charles, as well as Homer, and says that John spoke about the injury that Sam had done ''them'' in getting a check for a well which he was to send ''them'' and ''skipping'' with it and

leaving "them" in the lurch; and it was John apparently who in the same conversation at which all the brothers except Samuel were present, said that it was *their* intention as soon as *they* received the check to take it to the plaintiff's office and pay the claim.

There seems as much competent evidence showing that John was a member of the firm as that Homer was. The yard foreman for the plaintiff company says that Samuel alone ordered the goods that were delivered by that company.

It appearing under this state of the evidence that John endorsed the draft "Dailey Bros.," and that so endorsed it came into the hands of a purchaser for value, we think that the plaintiff was very far from sustaining the burden cast upon it by any theory on which it could hold the garnishee, to show that the endorsement was a forgery or without authority.

We are somewhat at a loss to know why the first judgment, which seems to us correct in dismissing the interplea after discharging the garnishee, should have been vacated and one substituted which adjudicated costs in its favor but gave no other relief to the interpleader. In a case like this, where the property attached is alleged to be an indebtedness to be reached by garnishment, and the garnishee answers that it owes nothing to the defendants, the finding of the issues in its favor seems to us to leave nothing to be done to the interpleader's petition but to deny or dismiss it.

The twelfth assignment of error questions the rightfulness of this judgment for costs. Although it is not specifically argued, we must hold it well assigned. So far as the judgment of the Municipal Court gives costs to the Studebaker Bank against the plaintiff it is reversed; in all other respects it is affirmed.

*Reversed in part and affirmed in part.*